## Bell, et al. v. Carroll.

(Decided December 18, 1925.)

Appeal from Harrison Circuit Court.

1. Banks and Banking—Complaint for Rescission of Contract of Sale of Bank Stock, Alleging Mistake of Seller and Fraud of Buyer and Wife, Held Sufficient.—Complaint to rescind oral contract of sale of bank stock, and for restoration of stock, alleging facts, and in effect, alleging mistake on part of seller and fraud on part of buyer and his wife, held sufficient.

2. Contracts—Equity has Jurisdiction to Decree Cancellation of Instrument or Contract for Mistake, whether Agreement Executory or Executed.—As general rule, equity has jurisdiction to decree cancellation of instrument or contract because parties, or one of them, labored under mistake of fact, whether instrument relates to executory agreement or to one that has been executed.

3. Banks and Banking—Contract for Sale of Bank Stock, in which Minds of Seller and Buyer did Not Meet, Set Aside.—Where owner of bank stock directed agent to sell it at par, thinking par meant market price, and buyer, hearing such direction, purchased it at par, though knowing it was worth much more, equity will cancel contract of sale and restore stock; seller having promptly offered to rescind, and buyer not having changed position.

CHESTER M. JEWETT and E. M. DICKSON for appellants.

M. C. SWINFORD, HANSON PETERSON, T. E. KING and WADE H. LAIL for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This litigation was commenced by appellee, Carroll, in the Harrison circuit court, against John L. Bell and

wife, Ella Bell, for the cancellation of a verbal contract on the grounds of fraud and mistake, and the restoration to him of seven shares of the capital stock of the National Bank of Cynthiana, purchased by Bell for his wife from appellee, Carroll, through his attorney, for the price of $700.00 when the market value of the stock was $2,100.00, the stock having been delivered by the attorney for Carroll to Bell at the time of the payment of the money, and was later transferred by the bank on its stock books to appellant, Mrs. Ella Bell, who now holds and claims it, and denies the right of appellee Carroll to a rescission of the contract and a restoration of the stock.

On the morning of February 18, 1924, Carroll entered the office of his attorneys, Swinford & Swinford, at Cynthiana, with a certificate showing his ownership of seven (7) shares of capital stock of the National Bank of Cynthiana, and, delivering the certificate to Mack Swinford, a member of the firm, directed him to sell the stock either at private or public sale. At that time appellant, John L. Bell, was in the office and heard part or all of the conversation concerning the sale of the stock. At his request Bell was allowed to examine the certificate. After Carroll left the office Bell asked young Swinford at what price the stock would be sold and being told "at par" he immediately asked Swinford not to advertise the stock for sale but to hold it until he could see his wife, appellant, Ella Bell, who was considering the purchase of stocks, and perhaps she would take the bank stock. This was agreed to by Swinford. Bell then left the office and went to the bank and inquired of the assistant cashier the market value of the stock and was told it was selling around $300.00 per share; thereupon he drew $700.00 cash from the bank and finding young Swinford on the street told him he would take the stock. Swinford replied that he would see appellee Carroll and get him to assign the stock and would let him have it. This was early in the afternoon of the same day. Swinford soon found Carroll and told him he had sold the stock to Bell, whereupon Carroll asked: "Q. What did you get for it?" to which Swinford replied "Par." Thereupon Carroll said "All right." The stock was duly assigned by Carroll and delivered to his attorney, Swinford, who in company with Bell carried it to the bank and there delivered it to Bell on the receipt of $700.00. Bell had the stock transferred on the books of the bank to his wife. Immediately on returning to his office Swinford learned

of the mistake; that the seven shares of stock were worth $2,100.00 instead of $700.00. Immediately he sought out Bell and told him of the mistake and offered to return the money and asked Bell to give up the stock, but Bell declined to do so. The next day Swinford made a formal tender of the money to Bell and asked a retransfer of the stock, which Bell again refused. Thereupon this action was commenced as set out above.

At the inception of the suit an injunction was sought and granted, restraining appellants, John L. Bell and wife, from selling or otherwise disposing of the stock until the case could be prepared and heard upon its merits. A motion was made before a member of this court to set aside the injunction granted to appellee, but this motion was overruled, and the injunction continued in force. Afterwards the case was prepared upon its merits and tried in the Harrison circuit court, the judgment cancelling the contract of sale of the bank stock and directing appellant, Ella Bell, to assign and transfer to appellee, Carroll, the certificate of stock No. 607 for the seven (7) shares of stock in the National Bank of Cynthiana; and further adjudging appellee, Carroll, to pay to the appellants the sum of $700.00 with six per cent interest thereon from February 18, 1924, up to August 15, 1924, after which time no interest was adjudged if the stock was reassigned and delivered by Mrs. Bell in accordance with the judgment. From that judgment this appeal is prosecuted.

There is not much controversy about the facts. It is the contention of appellee, Carroll, that his attorney misunderstood his instructions as to the price at which the stock was to be sold; or, if this was not true, then that he inadvertently used the word "par" when he meant "market value" in instructing his attorneys to sell the stock "at par," if he did so instruct him. Appellee, Carroll, had owned the stock for two or three years before he delivered it to Swinford to be sold. He had paid $260.00 per share for some of it and $270.00 per share for the balance. Only a short time before he offered the stock for sale he inquired at the bank the price at which it was selling and was told it was selling around $300.00 per share and that the most recent sale known to the bank officials brought $310.00 per share. With this information he took his certificate of stock to Swinford and directed him to sell it. Upon this subject Carroll testified: "When young Swinford came in I handed him the bank

stock and told him to sell it, and Mr. Bell takes the stock and said, 'What do you want for it?' I said $300.00 a share.' "

"Didn't you say 'par?' A. More than likely.

"Q. Didn't you say, 'I will take par?' A. I thought I said $300.00.

"Q. Not what you thought? A. I always did say 'par,' but I thought $300.00 was the par.

"Q. Didn't you say to Swinford, 'I want you to sell this stock for 'par?' ' A. More than likely.

"Q. You thought that $300.00 was par and you told him to sell it for par, didn't you? A. I can't say that I did. I always thought $300.00 was 'par.'

"Q. What did Mr. Bell say? A. Mr. Bell had the bond when I left.

"Q. Had the certificate of stock, you mean? A. Yes, I call it a bond. You call it that. I went out and about two o'clock that evening Mr. Swinford told me Mr. Bell had bought it. I know 'par' was said then because I said, 'What did you get for it?' He said 'par.' I said, 'Who bought the bond?' He said, 'Mr. Bell.' I said, 'When will you get it?' I thought it was $300.00, and he said, 'I will get the check in a day or two.'

"Q. Nothing was said then except that he sold it at par? A. Yes, sir.

"Q. You said, 'all right?' A, Yes, sir, I said 'all right,' because I thought it was $2,100.00.

"Q. There wasn't anything said except he said he had sold it at par? A. Yes, sir."

Concerning the same matter young Swinford testified:

"Q. Mr. Swinford, as I understand you, Mr. Bell was present in your office with Mr. Carroll, and you came in and Mr. Carroll told you that he wanted to sell that seven shares of Cynthiana National Bank stock at par? A. Yes, sir.

"Q. Did he say anything to you about selling at $300.00? A. No, sir, not at any time.

"Q. He never mentioned $300.00? No, sir.

"Q. He asked you to advertise it if you couldn't sell it privately? A. Yes, sir; he didn't say it that way. He said advertise it and sell it, and just before he left he told me to sell it privately, if I could.

"Q. You, of course, knew what par meant when he told you to sell it at par. A. Yes, sir.

"Q. You did just what he told you to do? Yes, sir.

"Q. Nothing was said to you about $300.00 or anything except to sell it at par? A. He never said anything to me about selling it for anything but par. I went back and left him and Mr. Bell talking, about the stock, I suppose."

Appellee's evidence is about to the same effect as that of young Swinford. It, therefore, appears with reasonable certainty that appellee, Carroll, instructed his attorney, Swinford, to sell the stock at "par," but it is equally as plain that Carroll confused the meaning of the word "par" with "market value," and meant by the word "par" "market value," and really in truth and in fact intended to instruct his attorney to sell the stock at its market value, and not at its par value, although the word "par" was actually employed.

Appellants' first complaint is that the allegations of the petition are not sufficient to warrant a cancellation of the contract and restoration of the stock on grounds of mistake and fraud, or either, because it is not alleged that the mistake was mutual. The petition sets out with great particularity the facts which led up to this litigation, in effect alleging that the sale and transfer of the stock by Carroll to the Bells was by mistake of Carroll and by the fraud of Bell and wife. This was sufficient.

For appellants it is insisted that the evidence is conclusive, that there was no mistake made as to the terms of the contract between appellants and appellee under which this stock was sold and delivered by Carroll to the Bells and under which Mrs. Bell received and paid for the stock, on the part of either of them. Appellants further contended that there was no mistake in the terms of the contract, and there being no mistake the appellee is not entitled to a cancellation. They also say they were guilty of no fraudulent conduct and there was no fiduciary of confidential relations existing between Carroll and them; that if there was mistake on the part of Carroll, it was not brought about by any action or conduct on the part of them, or either of them, and was not a mistake to which they, or either of them, in any way contributed. A fair consideration of all the evidence leads to the conclusion that appellee, Carroll, was laboring under a misapprehension as to what the word "par," which he em-

ployed in instructing his attorney, meant, and that he did not intend to sell the stock in question for less. than its market value, $300.00 per share, and believed he was so instructing his attorney who was acting as his agent. Appellants were guilty of no actual fraud, so far as the record shows, in connection with the stock transaction, but they, or at least John L. Bell, was cognizant of the fact that the stock was worth in the market at least $300.00 per share, and from this fact must, as a reasonable person, have known that the seller, Carroll, and his agent, were laboring under a misapprehension as to the value of the stock and that the price made by the agent for the stock was the result of a mistake either in the instructions of Carroll or arising from a misunderstanding of the instructions given.

With these facts before us, what are the rights of the parties under the law?. As a general rule equity has jurisdiction to decree a cancellation of an instrument or contract because at the time of its execution the parties, or even one of them, labored under a mistake of fact, and the rule is the same whether the instrument relates to an executory agreement or to one that has been executed. 4 R. C. L. 506-07.

In the recent case of the Board of Regents of the Murray State Normal School v. Cole, 209 Ky. 761, we held that contractor bidding for work, who, in the preparation of a lump sum bid, omitted an item of $22,000.00, and when his attention was called to his bid, which was several thousand dollars lower than the next lowest bid, and asked if he had not made a mistake, declared that he had not and was willing to stand by his figures, but later found he had made a mistake and immediately notified the secretary of the board of the mistake and asked for an opportunity to correct it, was entitled to relief as against the board of regents, who insisted upon the strict letter of his bid, and wanted to appropriate a ten thousand ($10,000.00) dollar certified check which accompanied his bid to manifest his good faith and ability to carry out his bid and to perform the work according to the plans and specifications. Although in that case Cole, alone, made a mistake by omitting an item of $22,000.00 from his estimate, the court held his mistake was not incidental but fundamental and that a substantial part of the whole consideration of the contract was wanting, and directed a cancellation of the contract and a return of the certified check. There, as here, no mutuality of mistake was in-

volved. The mistake was wholly unilateral. That opinion was rested upon the principle so admirably expressed in Story's Equity Jurisprudence, section 1381:

> "But where the mistake is of so fundamental a character that the minds of the parties have never in fact met, or where an unconscionable advantage has been gained by mere mistake or misapprehension, and there was no gross negligence on the part of the plaintiff, either in falling into error or not sooner making redress, and no intervening rights having accrued and the parties may still be placed *in statu quo*, equity will interfere in its discretion to prevent intolerable injustice."

The foregoing rule should govern this case. The minds of the parties did not in fact meet, and there was for that reason no contract. Carroll never intended to part with the bank stock at the price of $100.00 per share, but was asking and expected to receive $300.00 per share, and when he assigned the stock and delivered it to his agent, was laboring under the mistaken belief that the word "par" meant "market value," and that he was selling his stock for $300.00 per share; while, on the other hand, the buyer, appellant, John L. Bell, was thinking along another line, that he was buying the stock for $100.00 per share, at par, instead of the market value, and that he was only agreeing to pay and was willing to pay $100.00 per share for the stock. Their minds did not meet. Moreover, immediately after the transaction was closed and upon the same afternoon the stock was delivered by the agent of Carroll to the agent of Mrs. Bell, Carroll, through his agent, made known to Bell the mistake and offered to return the $700.00 to Bell and demanded that Bell retransfer the stock to him. No rights had intervened and the parties could easily have been placed *in statu quo*. Bell, a man of business experience and good judgment, must have known from all the surrounding circumstances and facts that Carroll and his agent, one or both, had made a blunder and that they did not intend and had not intended to sell the stock at $100.00 per share when it was worth $300.00 on the market, and that other persons were paying that price or higher for it, in that town. To allow the sale to stand would be what is termed by Judge Story "intolerable injustice," and to give more effect to the letter than to the spirit of the law. We think the rule is abundantly sup-

ported by the following authorities: 6 R. C. L. 623; 13 C. J. 373; Tiffany on Sales, 54; Board of Regents of Murray School v. Cole, 209 Ky. 761; Hearne v. New England Mutual Insurance Co., 20 Wall. 488; Church v. Kropp, L. R. A. 1917D 742; Harran v. Foley, 62 Wis. 584; Cunningham Mfg. Co. v. Rotograph Co., 13 Anno. Cases 1149 and note; Steele Co. v. Smith, 110 Maine 123; Groffman, &c. v. Burgess, 117 U. S. 839; Kyle v. Kavanaugh, 103 Mass, 356; Am. Rep. 561.

The equities are all on the side of appellee, Carroll. As appellants had not changed their situation by reason of their purchase of the bank stock they could have on the same day, after discovering the mistake, surrendered the stock and received the $700.00 with which they had parted. They were afforded a like opportunity on the next day and other days but refused to correct the mistake, which was fundamental and not incidental. Under such circumstances equity will aid the injured party where he acts promptly and the parties may be placed *in statu quo.*

As the chancellor so held his judgment is affirmed.