# Struve v. Lebus et al.

Jan. 23, 1940.

Hanson Peterson and Silas Jacobs for appellant.

Swinford & Sims for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—
Affirming.

Appellees, who were the plaintiffs below, brought this action in ejectment against appellant, defendant below, seeking to recover of him possession of a certain tract of land in Harrison county, Kentucky, containing about 44 acres. We will refer to the parties as plaintiffs and defendant, according to their status in the lower court.

The petition consists of the usual allegations made in such actions, and also alleged that on February 15, 1938, plaintiffs had sold. or contracted to sell the land in dispute to W. A. Marsh with the understanding that deed thereto was to be made on or before March 1, 1938, and that the purchaser would pay not less than one-third of the purchase price in cash and the remainder in two equal instalments due one and two years thereafter and to bear 6% interest from date until paid; that they .agreed to convey said property with covenants of general warranty and that by reason of defendant's unlawful holding the possession of the land plaintiffs had been prevented from conveying the said land to Marsh and by reason thereof they had been damaged in the sum of $500, and further alleged that the rents and profits of the land during the time appellant had been unlawfully·holding the possessions and using same were worth the sum of $20 per month, making a total of $320, and prayed to recover that sum in addition to the other relief asked.

Defendant filed a special demurrer to the petition— alleging that after the commencement of the action the plaintiffs had delivered to W. A. Marsh their deed to the land in dispute; that after the deed was delivered to Marsh, he, Marsh, instituted an action in the Harrison circuit court in which Marsh is plaintiff and this defendant, Cecil Struve, is defendant, seeking to recover of

defendant the same property involved in this action and by reason thereof plaintiffs have no right, power or authority or capacity to maintain this action.

Without the special demurrer having been passed on by the court, or any insistence that it be passed on, so far as the record discloses, defendant filed his answer in which he made no reference to the special demurrer, and after denying certain material allegations of the petition he pleaded affirmatively that on or about the 1st day of January 1937, he purchased from plaintiffs a certain farm in Harrison county, Kentucky, known as the "Tommy Moore Farm," for an agreed purchase price, which farm then consisted and now consists of three certain fields commonly and locally known as the "Woods Field," "House Field" and "Back Field," and that said fields and each of them were well fenced, enclosed or defined by then erected wire fences and lay adjacent to each other constituting one farm; that shortly after he purchased said farm including the land in dispute he moved upon said lands and took complete possession thereof to the boundaries thereof and farmed, cultivated and cleared said lands within said enclosure, and since said time of purchase he has openly, notoriously and adversely held the possession of said lands by reason of his purchase of same; that he purchased said lands as a whole and for an agreed lump sum and that the lands described in plaintiffs' petition, the possession of which they seek to recover, are a part of the said "House Field." He further alleged that by over-sight, mistake or fraud on the part of plaintiffs or the scrivener of the deed by which plaintiffs conveyed to him the lands he had purchased, that part of the "House Field" described in plaintiffs' petition was omitted and that from a reading of the deed, he, defendant, was unable to detect said omission and was not aware of same until plaintiffs made claim to the lands in the month of March, 1938, and had he been aware of such omission he would not have accepted said deed or paid the purchase price for said lands. He alleged that by reason of said errors oversight or mistake as above indicated the plaintiffs should and ought to be required to convey to defendant the said lands in dispute; but if this cannot be done the sale and purchase agreement and the deed of conveyance executed by plaintiffs to defendant should be cancelled and held for naught and that defendant stands ready and willing and able to convey to plaintiffs the real estate they conveyed to him pursuant to the agreement

above set out; that a general accounting should be had by the plaintiffs and defendant concerning the rents, issues and profits of said land, from the time he purchased same. The prayer was in the alternative—that plaintiffs be required to convey to defendant the land in dispute or if that should not be done the deed should be cancelled and settlement had between the parties.

The issues were completed and by agreement of parties the case was submitted to the court without the intervention of a jury and it was agreed that since the affirmative part of defendant's answer was in the form of an original action to require specific performance of the alleged contract, or to cancel the deed, defendant assumed the burden of proof throughout the trial and after all the proof was heard in open court the chancellor made a finding of facts and wrote an opinion in the case, which was followed by judgment of the court dismissing defendant's answer and cross-petition, or action to have the deed reformed or cancelled, and adjudged the plaintiffs to be the owner of the land in dispute and that they recover of defendant $75 damage for the use of the land. From that judgment defendant has prosecuted this appeal.

It is first insisted for defendant that the court should have sustained the special demurrer. In the first place there was no insistence on the demurrer and defendant filed his answer to the merits of the action as though no demurrer was pending. In the circumstances the presumption on appeal would be that demurrer was either withdrawn or overruled. Baker v. Robinson, 273 Ky. 410, 116 S. W. (2d) 958.

Many other cases might be cited to the same effect but this principle is too well known to require citation of authorities.

And furthermore, it is admitted in brief of defendant that the court adjudged the deed from plaintiffs to Marsh to be champertous and void because defendant was in the possession of the land at the time the deed was made, and the judgment directed that the clerk write the word "void" on the record in the clerk's office. The defendant insists that plaintiffs have not caused the clerk to write the word "void" on the deed of record in the clerk's office, and for that reason the deed is still in effect. Plaintiffs are not responsible for the clerk's failure to carry out the orders of the court, and the failure

of the clerk to so write the word "void" on the record does not invalidate the judgment of the court which settles and fixes the rights of the parties. The writing of the word "void" by the clerk as directed by the judgment is a mere clerical or ministerial act and may yet be done at any time. There is no showing that there is any appeal pending in the Marsh case and hence the judgment of the lower court is final and the deed from plaintiffs to Marsh is no longer in existence. This alone destroys the merits of the special demurrer.

We now come to a consideration of the evidence which is the determinative question in the case.

The chancellor found the following facts:

"1st. The defendant, Struve, purchased of the plaintiffs 145½ acres of land and his deed calls for this number of acres, which he now has in his possession.

"2nd. This land was sold from a plat and by a survey and the plaintiffs made no warranty about a fence or where the line would be, except as it appeared from the Plat in their office.

"3rd. There was no mistake on the part of the scrivener of the deed and there was no oversight on the part of any of the parties. There was no misrepresentation or fraud on the part of the plaintiffs and there was no mutual mistake that would warrant a reformation and there was no unconscionable conduct or fundamental or material error on the part of the defendant that would warrant a rescission of the deed.

"4th. The defendant, Struve, has unlawfully held the land in controversy since the 1st day of January 1937, and the use of said tract of land is reasonably worth the sum of $100.00 per year."

It is not disputed that defendant's deed called for 145½ acres of land which he now has in his undisputed possession. The other facts found by the chancellor are in dispute and must be determined by the evidence.

The 44 acres of land in dispute lies between the line called for in the deed running across the "House Field" and a fence at the other end of the "House Field." It is defendant's contention that plaintiffs intended to sell and he intended to purchase all of the "House Field." It is plaintiffs' contention that the line was pointed out

on the map at plaintiffs' office in Cynthiana and there was nothing said about any fence, and the entire boundary included 145½ acres at a price of $40 an acre which totals $5820. Defendant thought this price too high and plaintiffs then agreed to deduct $320 and sell him the boundary called for in the deed for $5500, which was then agreed on.

The chancellor rendered an opinion which we here reproduce in part:

"* * * The defendant's answer and cross petition is in the nature of an original action whereby he seeks to have his deed reformed or rescinded. He admits that his deed does not embrace the land in dispute but claims that it was omitted therefrom either by mistake of the scrivener, oversight of the parties, misrepresentation, mistake or fraud.

"Mr. Struve contends that he was to get the so-called three fields, regardless of acreage, and that the words, 'more or less' are sufficient to cover the 44 acre tract in controversy and he claims that because there was no fence at the end of his line, according to the Plat, then he was permitted to take to where there was a fence and thus embrace the tract in dispute.

"It will be recalled that this transaction was made in Lebus' office in Cynthiana, Kentucky, and that the sellers were at no time on the premises to point out to the buyer where his line would be and that they were not familiar with the lines. That the Lebuses sold from a Plat and Mr. Struve bought from a Plat and there was no evidence in the whole case that anything was ever said about a fence, except the testimony of Mr. Struve. Mr. Frazier D. Lebus, Mr. Clarence Lebus, Jr., and Mr. Clarence Ewing each testified that nothing was ever said about a fence and the preponderance of the evidence was to the effect that the Lebuses sold the 145½ acre tract by the acre and that it was lumped to Mr. Struve for $5500 in order to close the deal.

"It goes without argument that a mistake sufficient to reform an instrument must be shared in by both parties or there must be a mistake on one side and fraud on the other. It was admitted by Struve's Counsel in open Court that there was no fraud, so

it goes without further argument that there could be no reformation.

"The only remaining question is whether or not the facts justify a rescission. It is well known that Courts will rescind a deed on evidence that is insufficient to warrant a reformation but the cases are unanimous to the effect that the one who seeks the rescission must show a mistake on one side and unconscionable conduct on the other, or show that the mistake was of such a fundamental character that it was evident that the minds of the parties did not meet.

"Counsel for Struve cite, and apparently rely, upon the following cases: Schroath v. Pioneer Building Association, 274 Ky. 685, 119 S. W. (2d) 1113; Fields v. Cornett, 254 Ky. 35, 70 S. W. (2d) 954; Fidelity & Casualty Co. v. Waugh, 222 Ky. 198, 300 S. W. 592; Bell v. Carroll, 212 Ky. 231, 278 S. W. 541. The Schroath case is cited first and is apparently the most recent case from our Court of Appeals. The parties there sought a reformation and the reformation was granted and the Court in reciting the facts said [274 Ky. 685, 119 S. W. (2d) 1114]: 'The stenographer in describing the land intended to be incumbered, by oversight and mistake, copied only the description of the larger tract contained on the first page of that deed and failed to observe the description on the back of that same sheet of the smaller tract and the mistake was never discovered until it was manifested in this suit.'

"It clearly appears from that statement of facts and from a reading of the case that it is in no wise parallel to the case at bar.

"In the case of Fields v. Cornett, supra, the seller sold the buyer 200 acres of land, more or less, with covenants of general warranty and it was afterwards discovered that the tract contained only 125 acres and that the coal and mineral rights had been previously conveyed to another. The land was mountainous and unimproved and was adapted only to mining and the Court held that the mistake was of such a character as to warrant a rescission and also recited the evidence to the effect that the seller told the buyer at the time the deal was closed that 'I can make you a genuine warranty deed for the

land.' It therefore clearly appears that this case is no authority for the instant one.

"In the case of Board of Regents of Murray State Normal School v. A. E. Cole, 209 Ky. 761, 273 S. W. 508, the contractor in making a bid, through mistake, omitted a $22,000 item and the Court held that the mistake was of such a nature that it was apparent that the minds of the parties did not meet; and in the case of Bell v. Carroll, 212 Ky. 231, 278 S. W. 541, the seller sold certain bank stock at par when the difference in par value and market value was the difference in $100 and $300, and the Court there held that the mistake was of such a nature that it was apparent that the minds of the parties did not meet and that the seller instead of 'par' meant market value.

"In the case of Fidelity & Casualty Co. v. Waugh, 222 Ky. 198, 300 S. W. 592, 593, the Court of Appeals, speaking through Judge Hobson, and in discussing the last two mentioned cases, said: 'The authorities go no farther than these two cases.'

"It must also be remembered by counsel for Mr. Struve that the burden of the proof in this case was on them and that a mere preponderance of the evidence is not sufficient and the correct rule seems to be stated by our Court of Appeals in the case of Coleman v. Illinois Life Ins. Co., 82 S. W. 616, 617, 26 Ky. Law Rep. 900, wherein the Court said: 'The mistake must be clearly established by the proofs. * * * Indeed, in no case will a court decree an alteration in the terms of a duly executed contract unless the proofs are full, clear, and decisive. Mere preponderance of evidence is not enough. The mistake must appear beyond reasonable controversy.'

* * * * * *

"I am therefore of the opinion that the facts in this case are wholly insufficient to justify a rescission and fall far short of the facts in the case cited by the defendant and that the principles of law enunciated in those cases compel me to find for the plaintiffs; * * *"

Upon examination of the evidence and the authori-

ties cited in the opinion of the chancellor and other authorities bearing upon the issues, it is our opinion that the chancellor reached the correct conclusion. True it is, the evidence is conflicting, but we are unable to say that the judgment is contrary to the preponderance of the evidence, and in such cases this court will not disturb the finding of the chancellor.

Judgment affirmed.