**Beatrice Mullin MEYER'S EXECUTOR (Garland R. Hubbard), Appellant,**

v.

**Martha C. HUBER et al., Appellees.**

Court of Appeals of Kentucky.

May 27, 1955.

Clem H. Block, Garland R. Hubbard, Louisville, for appellant.

Bullitt, Dawson & Tarrant, R. Lee Blackwell, Louisville, for appellees.

MILLIKEN, Judge.

This action was instituted February 26, 1952, in the Jefferson Circuit Court by Garland R. Hubbard, executor of the will of Beatrice Mullin Meyer, against the defendants, The Equitable Life Assurance Society of the United States (hereinafter called Equitable) and an agent for Equitable, Martha C. Huber. The complainant executor asked (1) for a rescission of Mrs. Meyer's Life Annuity contract with Equi-

table, and (2) to recover the $8,000 consideration paid for the contract, less the $247.60 in annuity payments Mrs. Meyer received prior to her death.

On March 8, 1951, Equitable issued to Mrs. Beatrice Mullin Meyer an $8,000 life annuity contract. By the terms of the contract Equitable acknowledged receipt of $8,000 and agreed to pay Mrs. Meyer $49.52 each month during her lifetime. The life annuity contract was to expire with the annuitant's death. It did not provide for any remainderman and in that respect differed from the "Refund Annuity" type of contract which provides for a remainderman but pays the annuitant a smaller monthly income. Mrs. Meyer would have received $37.04 a month under the Refund type annuity for $8,000 premium payment.

Mrs. Meyer was in her seventies when she bought this annuity. She received back on her investment only five monthly annuity payments of $49.52, or a total of $247.60, before she died suddenly from a cerebral thrombosis on August 12, 1951. At the time she purchased this annuity Mrs. Meyer had a life expectancy of considerably less than the 14 years she would have had to live to break more than slightly even on her investment. Her expectancy was either 8.75 years if she were 71 years of age, as contended by Equitable, or 5.88 years if she were 76 years of age as contended by Mr. Hubbard, her executor.

In Mr. Hubbard's petition he alleged as grounds for rescission that at the time Mrs. Meyer purchased the life annuity (1) she was laboring under such a degree of mental infirmity as to render her incapable of understanding the nature and character of the transaction or of protecting her own interests; (2) she was mistaken as to material facts, but for which she would not have purchased the annuity; (3) she was unduly and improperly influenced by Miss Huber, the Equitable agent, a close friend who clothed herself with the character of a fiduciary; and (4) there was an inadequacy of consideration. The trial court held that the plaintiff had failed to es-

tablish grounds for a rescission of the contract and dismissed plaintiff's petition.

It appears from the evidence that the defendant Martha C. Huber, the Equitable agent, and the decedent, Mrs. Meyer, both occupied apartments in the Puritan Apartment building in Louisville and were acquainted. In June, 1949, Mrs. Meyer signed an application for a $3,000 life annuity with Miss Huber, who was still acting as an Equitable agent, even though she was an elderly woman 82 years of age. Both Miss Huber and Mr. Smith, a supervisor for Equitable in Louisville, testified that although Mrs. Meyer had already delivered a check in payment of the $3,000 premium she asked that the contract be canceled because she had decided this annuity did not provide her enough income, and Equitable readily canceled it and returned her check.

According to Mr. Smith, some twenty months later Mrs. Meyer again talked to him about an annuity and had him quote her comparative rates for a "Life" annuity and a "Refund" annuity. He testified that against his advice she said it was the "Life" annuity she wanted, even though no payments would be made to anyone after her death. The commission to be earned by Mr. Smith and Miss Huber was the same on either type policy.

In February, 1951, Mrs. Meyer and Miss Huber again discussed annuities and this latter negotiation culminated in the purchase on March 1, 1951, by Mrs. Meyer of the $8,000 life annuity involved in this suit. Just prior to the purchase of this annuity Miss Huber accompanied Mrs. Meyer to the office of Mr. Hubbard, the plaintiff, executor of Mrs. Meyer's will, who had also advised Mrs. Meyer as to her duties as executrix of her husband's estate. It was their purpose to obtain Mr. Hubbard's help in cashing a $5,000 stock certificate at the Greater Louisville First Federal Savings and Loan Association so Mrs. Meyer could use the money thus obtained to purchase the annuity. Mr. Hubbard testified that as her attorney he warned Mrs. Meyer against purchasing an annuity contract without first

consulting with him relative to the comparative advisability of making other investments, but Mrs. Meyer ignored Mr. Hubbard's advice.

Since the stock certificate was in the joint names of Mrs. Meyer and her deceased husband, she and Miss Huber went first to the courthouse to acquire an attested copy of Mrs. Meyer's qualification as executrix, which showed on its face the husband's death, then they went to Greater Louisville and cashed the certificate. Miss Huber testified that she urged Mrs. Meyer to purchase the "Refund" type annuity, but that Mrs. Meyer wanted the greater income afforded by the "Life" annuity. Miss Huber would make the same commission on the sale of either type annuity. Miss Huber took the precaution of writing down on a piece of paper the comparative figures showing what Mrs. Meyer would receive from a life annuity and what she would receive from a refund annuity. She had Mrs. Meyer sign a statement on this piece of paper to the effect that she understood the figures.

The defendants presented a number of witnesses—officers of the Puritan Hotel, a druggist, a physician, personal friends of Mrs. Meyer's, and poker associates—each of whom testified to the rather normal mentality of Mrs. Meyer. On the other hand, the plaintiff-executor offered the opinions of several witnesses as to the mental furriness of Mrs. Meyer. For the sake of brevity, we will not detail the testimony. It is our conclusion that the chancellor is abundantly supported in his conclusion that Mrs. Meyer, despite her advanced age, was fully cognizant of what she was doing when she bought the annuity.

Counsel for plaintiff advanced the theory that rescission should be ordered, based solely upon a unilateral mistake. The general rule relied upon by the plaintiff is stated in Fields v. Cornett, 254 Ky. 35, 41, 70 S.W. 2d 954, 957, as follows:

" 'Equitable relief from a *mutual* mistake is frequently given by a *reforma-*

*tion* of the contract. But a contract will not be *reformed* for an *unilateral* mistake. Equitable relief may, however, be given from an *unilateral* mistake by recision of the contract. Essential conditions to such relief are: (1) The mistake must be of so grave a consequence that to enforce the contract as actually made would be unconscionable. (2) The matter as to which the mistake was made must relate to a material feature of the contract. (3) Generally the mistake must have occurred notwithstanding the exercise of ordinary diligence by the party making the mistake. (4) It must be possible to give relief by way of recision without serious prejudice to the other party except the loss of his bargain. In other words, it must be possible to put him in statu quo.' "

Counsel for plaintiff alleges that Mrs. Meyer was mistaken (a) as to her age, she thought she was 71 years of age when she was actually 76; (b) as to her life expectancy; (c) as to the condition of her health; (d) as to her assets; (e) about the amount of income she would receive from the life annuity; and (f) as to the actual terms of the annuity contract. He asserts she did not comprehend that there would be no remainder for her granddaughters.

The Appellate Division of the Supreme Court of New York was confronted with the same problem in Woodworth v. Prudential Ins. Co. of America, 258 App.Div. 103, 15 N.Y.S.2d 541, 543. The court pointed out that it was unsound "to assume that in entering into an annuity contract the parties did not contemplate the very possibility that here happened, namely, that the annuitant might die before his average life expectancy and receive a small fraction, in return for the purchase price paid. The parties also contemplate that the individual annuitant might live to and even far beyond the average expectancy, in which case, under the terms of the policy herein, the insurance company is bound to continue quarterly annuity payments during the annuitant's life no matter how far prolonged."

In Rishel v. Pacific Mutual Life Ins. Co. of California, 10 Cir., 78 F.2d 881, 131 A. L.R. 414, 887, it was said: "An annuity contract cannot be avoided because the annuitant dies before attaining his average expectancy, or because it develops that his health was so impaired when the contract was written that his expectancy was less than the average. Annuity contracts could not be written by financially responsible companies if a recovery of the premium pro tanto could be had upon proof after death of some impairment of the organs when the contracts were written."

■ Despite the Woodworth case, supra, which was relied on by the trial court, counsel for the plaintiff still presses the doctrine of unilateral mistake and cites three Kentucky cases in support thereof: Board of Regents of Murray State Normal School v. Cole, 209 Ky. 761, 273 S.W. 508; Bell v. Carroll, 212 Ky. 231, 278 S.W. 541, and Fields v. Cornett, supra. In each of these cases the evidence that the party seeking rescission had made a mistake was so palpably clear that equitable relief was granted. Since what happened in the present case was necessarily within the contemplation of the parties, we see no clear and convincing evidence of a mistake which would justify rescission. Conceding arguendo that an executed contract may be rescinded for unilateral mistake, we cannot overlook the fact that the evidence that a mistake was made must be clear and convincing. The mistake relied on to the effect that Mrs. Meyer was mistaken as to her assets, clearly does not relate to a material feature of her life annuity contract with Equitable, and therefore cannot be a ground for rescission within the rule relied on by counsel for plaintiff as the rule is stated in Fields v. Cornett, supra.

There is no clear and convincing evidence that Mrs. Meyer was mistaken as contended either as to the amount of income she would receive monthly from the annuity or that she believed there would be a remainder for her granddaughters. Indeed, she accepted five monthly installments without objecting. She was adequately informed that there would be no remainder if she purchased the life annuity. She was advised to purchase the refund annuity, but did not do so because it did not provide enough income.

■ Counsel for appellant urges that Mrs. Meyer was unduly and improperly influenced in the purchase of the life annuity by Miss Huber, the Equitable agent, a close friend who allegedly clothed herself with the character of a fiduciary. On this point the trial court had this to say: "There is no showing that Miss Huber took any unfair advantage. There is no showing of any unusual confidential relationship between these two elderly ladies. The Court, therefore, rejects the claim that Miss Huber may be charged with a constructive fraud." This court cannot say the trial court's finding was clearly erroneous. CR 52.01. Indeed, the trial court's conclusion seems consistent with the evidence.

■ There is also a claim in this case that there was an inadequacy of consideration, it being pointed out that even if Mrs. Meyer had lived out her average life expectancy, she still would not have been repaid a sum at all equal to the amount that she had paid in. On this point the trial court held: "* * * it does not appear that this rate of premium was any different from that which the Company would have charged any other individual of the same age. Mrs. Meyer may have lived beyond her life expectancy and may have received payments in excess of the amount charged her as premium. Under these circumstances, the court cannot hold, as a matter of law, that there was an inadequacy of consideration in this case." We concur in this conclusion.

The judgment is affirmed.