IRENE SHREEVE WOODWORTH, Individually, and as Executrix and Ancillary Executrix, etc., of CHAUNCEY C. WOODWORTH, Deceased, and Others, Respondents, *v.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant.*

First Department, November 17, 1939.

*Benjamin Paul Goldman* of counsel [*Solon Weit,* attorney], for the appellant.

*Albert E. Schwartz* of counsel [*Louis A. Tepper* and *Anschel E. Barshay* with him on the brief; *Harry B. Solow,* attorney], for the respondents.

DORE, J. The complaint, the sufficiency of which has been sustained at Special Term, seeks to rescind a non-refunding annuity policy issued by defendant to Chauncey C. Woodworth on May 1,

---

* Revg. 171 Misc. 585.

1936, on the theory of a unilateral material mistake of fact, viz., that Woodworth, the annuitant, at the time the policy was issued, was wholly unaware that he was then suffering from serious constitutional diseases which would cause his death in less than two years, and had he known of such condition would not have made the contract.

The action is brought by plaintiffs as executors of Woodworth, deceased. The complaint alleges that on May 1, 1936, Woodworth (hereinafter referred to as " the annuitant ") paid defendant $100,000 cash in advance in consideration of defendant issuing an annuity policy providing for quarterly payments to him of $1,571 for the remainder of his life; that he was then fifty-two years of age and had a life expectancy of nineteen and forty-nine-one-hundredths years; that at the time he made the contract he was unaware of the fact that then and for some time previous thereto he had been suffering from diseases of such serious nature that it was a physical impossibility for him to live more than two years; that had he known of this he would not have paid the $100,000; that he died July 15, 1937, from such diseases, before which date he had received only four quarterly payments totaling $6,284; that defendant retains the balance of $93,716, and is, therefore, unjustly enriched. The complaint demands rescission and return of the balance retained by defendant.

The Special Term held if plaintiffs could prove that a disease, unknown but pre-existing on May 1, 1936, the time of making the contract, caused the annuitant's death on July 15, 1937, plaintiffs should recover; that defendant would merely be deprived of the benefit of the annuitant's mistake, a benefit to which it was never entitled; and that no injury would result to any one.

We think the ruling was error and that the complaint does not state facts sufficient to constitute a cause of action. There is no claim of mental incapacity, fraud, overreaching, undue influence, duress, misrepresentation, the existence of any fiduciary relationship, or that defendant had any knowledge of the alleged diseases. By the express terms of the annuity contract, as pleaded, the annuitant was to receive quarterly payments only so long as he lived, without any payment upon or after death. The complaint alleges that under the terms of the contract the quarterly payments were to be made while the annuitant lived, " but without credit or promise to pay anything whatever to anyone whomsoever on any quarter day succeeding the death of the said Chauncey C. Woodworth or to give any credit to this estate, regardless of how few quarter-annual payments should be made prior to the death of the said Chauncey C. Woodworth and subsequent to the execu-

tion and delivery to him of the annuity policy or contract hereinbefore referred to." That was the agreement to which both parties assented. On the facts pleaded it is binding on both parties. It may not be rescinded by plaintiffs because, as the event showed, there were few quarterly payments made before death, and it could not be rescinded by defendant on analogous facts if the event were otherwise and there were many quarterly payments made, even beyond the expectancy period of the class in which annuitant was when the contract was made.

When it is said that the annuitant had a life expectancy at the age of fifty-two of about nineteen years, that means the annuitant was in a class which at his age, based upon the calculation of actuarial tables covering a large number of lives, had an average expectancy of nineteen years. It does not mean each member of the class would live nineteen years. Of that class, as indicated by the actuarial tables themselves, a certain number would die within one year, that is, at the age of fifty-three, and another estimated number in each succeeding year. In *Hartley* v. *Eagle Ins. Co.* (222 N. Y. 178, 186) the court said that " tables of mortality are at best only slight evidence of the expectancy of life of any particular person," and that " such tables show only the average length of life among the classes whose lives are taken into consideration in preparing the tables."

The Combined Annuity Tables are prescribed by subdivision 5 of section 84 of the Insurance Law as a minimum standard for the valuation of annuities issued after January 1, 1931. Whatever table or valuation standard is used to calculate the price of an annuity, it is contemplated that the annuitant is a member of a class whose average expectancy under the annuity table is a specified number of years, but that some of the class will die within the first year thereafter and others within succeeding years before reaching the average normal expectancy. It was unsound, therefore, to assume that in entering into an annuity contract the parties did not contemplate the very possibility that here happened, namely, that the annuitant might die before his average life expectancy and receive a small fraction in return for the purchase price paid. The parties also contemplate that the individual annuitant might live to and even far beyond the average expectancy, in which case, under the terms of the policy herein, the insurance company is bound to continue quarterly annuity payments during the annuitant's life no matter how far prolonged.

The insurance company need not require that the annuitant take a physical examination before making the contract. If for his own protection he desired such examination, on the facts pleaded the company did nothing whatever to prevent it.

On substantially the same state of facts the issue here presented has been decided adversely to plaintiffs' contention in numerous decisions of the courts. (*Davis* v. *Equitable Life Assurance Society*, 254 App. Div. 851; affd., 280 N. Y. 656; *Rishel* v. *Pacific Mutual Life Ins. Co. of California*, 78 F. [2d] 881; *American State Bank of Bloomington* v. *National Life Ins. Co.*, 297 Ill. App. 137; 17 N. E. [2d] 256; *Rinn* v. *New York Life Ins. Co.*, 89 F. [2d] 924.)

In the *Rishel* case, brought for rescission in part on the ground that the annuitant was suffering from dropsy when the policy was taken, the court said:

" Standard annuity contracts are written on the theory that while the span of life of an individual is unknown, the average expectancy of a large group is known; the consideration is therefore based on the average life, and is that sum which, plus conservative compound interest (generally 3% or 4%) and less expenses, will equal the payments to be made during the expectancy of the annuitant. If the annuitant lives longer than that, he receives more than he paid in; if less, he receives less. * * *

" An annuity contract cannot be avoided because the annuitant dies before attaining his average expectancy, or because it develops that his health was so impaired when the contract was written that his expectancy was less than the average. Annuity contracts could not be written by financially responsible companies if a recovery of the premium *pro tanto* could be had upon proof after death of some impairment of the organs when the contracts were written."

The complaint in the *Davis* case (*supra*), which was considered by this court, alleged and the proof at trial established that the annuitant therein on July 29, 1936, paid $10,000 for an annuity contract under the terms of which he was to receive annual payments during his life, with no payment at or after his death; that he was fifty-six years of age and had a life expectancy of seventeen and ninety-nine-one-hundredths years; that when he entered the contract he believed he was in good health, but in fact then and for some time theretofore he was actually suffering from incurable cancer of the lung, the proximate cause of his death on January 5, 1937, before even the first annuity payment had been made; that had he known he was suffering from such incurable disease and had he not acted under a mistake of fact, he never would have applied for the contract. The proof also showed that the annuitant did in fact have cancer of the lung at the time he made the contract but did not know it. Before he made the contract he had consulted several physicians who failed to diagnose the condition. The contract contained a clause that if the annuitant died before

the date of the first annual payment no payment would be made nor should the insurer refund the consideration paid or any part thereof. This is precisely what happened. Although the annuitant's expectancy was about eighteen years and although he had paid $10,000 on July 29, 1936, he died on January 5, 1937, of the disease with which he was afflicted on the previous July twenty-ninth. The trial court dismissed the complaint at the close of plaintiff's case and held there was no proof of any facts which would justify a court of equity granting rescission. This court and the Court of Appeals affirmed that determination. (*Davis* v. *Equitable Life Assurance Society, supra.*)

Plaintiffs in this action also brought two other actions in the United States District Court for the Southern District of New York, similar to the cause of action alleged herein, on the basis of two other annuity contracts issued to the same Chauncey P. Woodworth by two other insurers. In each case the court held the complaint should be dismissed and that no action for rescission would lie. (*Woodworth* v. *Connecticut Mutual Life Ins. Co.*, 27 F. Supp. 732; *Woodworth* v. *Travelers Ins. Co.*, U. S. Dist. Ct. S. Dist. N. Y., MANDELBAUM, J., memorandum opinion noted in N. Y. L. J. April 28, 1939, p. 1960.)

The result is not an unjust enrichment of defendant. That assumption is based on the erroneous notion that defendant has a profit for itself of the balance of the $100,000 not paid the annuitant during his lifetime. But the entire purchase price of the contract and the balance remaining unpaid become part of a required reserve fund for the benefit of all annuitants in the class. Annuity contracts issued by responsible companies are necessarily issued on a basis that will establish a reserve computed in accordance with a proper minimum valuation standard and sufficient to meet all contracts as they accrue. Annuitants who die early receive less than the amount paid; those who survive beyond the expectancy period receive more than they paid. Annuity contracts could not be written nor could proper reserves be with certainty assured if upon proof after death of unknown illness when the contracts were written a recovery of the premium could be had.

The orders appealed from should be reversed, with twenty dollars costs and disbursements, and the motion to dismiss the complaint granted.

MARTIN, P. J., GLENNON, UNTERMYER and CALLAHAN, JJ., concur.

Orders unanimously reversed, with twenty dollars costs and disbursements, and motion to dismiss the complaint granted.