[No. A106449. First Dist., Div. Two. Aug. 24, 2005.]

ANDREW K. KNIGHT, Plaintiff and Appellant, v.
HAYWARD UNIFIED SCHOOL DISTRICT, Defendant and Respondent.

## COUNSEL

Nossaman, Guthner, Knox & Elliott, John T. Hansen and Deborah E. Beck for Plaintiff and Appellant.

LaPlante & Spinelli, Domenic D. Spinelli and M. Teresa Abad Levenfeld for Defendant and Respondent.

Kronick, Moskovitz, Tiedemann & Girard and Robin Leslie Stewart for Schools Excess Liability Fund as Amicus Curiae on behalf of Defendant and Respondent

Jacobsen, Hansen, Najarian & McQuillan and Leith B. Hansen for Schools Insurance Group as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**KLINE, J.**—Andrew K. Knight, a teacher, appeals the grant of summary judgment by the trial court in favor of his employer, Hayward Unified School District (the District), on his claim of disability discrimination brought under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).[1] Appellant's claim arises from the fact that the group health insurance policy provided by the District to its employees does not cover in vitro fertilization (IVF) treatment, which appellant and his wife required and were obliged to obtain at their own expense.

We shall affirm the judgment.

### FACTS AND PROCEEDINGS BELOW

One of the group healthcare plans made available by the District to its employees was that of the PacifiCare Health Maintenance Organization (the

---

[1] Unless otherwise indicated, all statutory references are to the Government Code.

PacifiCare Plan), which was the healthcare plan appellant selected for coverage. Though it covered many other forms of infertility treatment, the PacifiCare Plan specifically excluded IVF treatment from coverage. This exclusion applied to all District employees who selected the PacifiCare Plan, who were covered under the same terms and conditions.

Appellant's wife, who was never employed by the District but was covered as his dependent, was in 1991 diagnosed with polycystic ovarian disease and, apparently for that reason, unable to become pregnant. Initially, appellant's wife received various forms of infertility treatment—including a laparoscopy, treatment with the prescription drug Clomid, and three cycles of intrauterine insemination—that were all covered under the PacifiCare Plan. In October 1998, and again in January 1999, appellant's wife underwent IVF treatment. Both procedures resulted in pregnancy and subsequent miscarriages. Thereafter, in March 1999, appellant and his wife adopted their son.

Appellant's wife resumed infertility treatment in late 1999 and early 2000 through Metformin/Glucophage treatment that was also covered under the PacifiCare Plan. After eight months of treatment, she conceived a daughter, who was born on January 8, 2001.

At all material times, healthcare plans offered by the District for purchase by its employees were selected by a Joint Committee for Health Cost Containment (JCHCC), composed of District staff and representatives of the employee unions with which the District dealt, including appellant's union, the Hayward Education Association (HEA). The plans to be offered by the District were proposed by majority vote of members of the JCHCC. However, because the collective bargaining agreement between the District and HEA provided that the union "retains the right to select health and welfare plans and carriers," the District could not offer a particular plan to employees that had not first been ratified by the HEA. After the PacifiCare Plan was selected by the JCHCC and ratified by the HEA, the District entered into a group healthcare contract with PacifiCare that became a part of the collective bargaining agreement with the HEA. Employees could either obtain healthcare benefits under the PacifiCare Plan, or from one of the other health insurance carriers available under the District's core plan, or "opt out" of health coverage upon presentation of proof of alternate coverage.

Appellant and his wife first became aware IVF treatment was not covered by the PacifiCare Plan in April 1998. After one of their physicians nevertheless requested preauthorization for such treatment, it was denied on August 28, 1998, and the denial was upheld by PacifiCare's Appeals and Grievance Committee on December 22, 1998. On October 7, 1998, appellant and his wife wrote the assistant superintendent of employee services for the District

requesting that the District "improve the infertility insurance coverage." The letter stated that "[i]nfertility is clearly a physical impairment [and] excluding IVF services is a disability-based employment practice that is illegal" because it violates the American with Disabilities Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.). There was no response to this letter. Five days later, appellant's wife commenced IVF treatment at her and appellant's expense.

On June 8, 1999, appellant filed a discrimination charge against the District with the Equal Employment Opportunity Commission (EEOC), alleging sex and disability-based discrimination under the ADA. The EEOC filed appellant's charge with the California Department of Fair Employment and Housing (DFEH), which immediately prepared a right to sue notice stating that "[t]he EEOC will be responsible for processing the complaint. DFEH will not be conducting an investigation into this matter. EEOC should be contacted directly for any discussion of the charge. DFEH is closing its case on the basis of 'processing waived to another agency.' "

Appellant's administrative complaint, filed in propria persona, stated he was a teacher employed by the respondent District and enrolled under its health plan, and that "[m]y dependent has been diagnosed with a disability. In October 1998, I requested that [the District] improve its health plan coverage since it excludes coverage for treatment used exclusively or nearly exclusively to treat my dependent's disability. To date, I have not received a response. [¶] [The District] has discriminated against me by participating in a . . . contractual relationship with PacifiCare which discriminates against me based on the known disability of my dependent."

After conducting an investigation, on July 12, 2000, the EEOC issued a determination of probable cause that the District discriminated against appellant by excluding IVF treatment from the group health plan offered its employees. The determination stated that appellant "is being discriminated against as evidenced by [the District's] having contracted for an insurance plan which denies coverage for Intro-Vitro [sic] Fertilization, a treatment which is used exclusively or nearly exclusively to treat a disability, infertility. Further, [appellant] is a member of a class of employees whose dependents are being denied certain medical insurance coverage solely because of their disability, infertility." After conciliation failed, the EEOC issued a "right to sue" letter.

On February 21, 2001, the United States Supreme Court issued its opinion in *Board of Trustees of Univ. of Ala. v. Garrett* (2001) 531 U.S. 356 [148 L.Ed.2d 866, 121 S.Ct. 955], holding that the ADA does not apply to the states. Because California school districts are considered subdivisions of the state, appellant filed suit in superior court under the FEHA, the pertinent parts of which are substantially similar to title I of the ADA.

The first amended complaint, filed September 6, 2001, alleged four causes of action. The first and second alleged disparate treatment discrimination and disparate impact discrimination based on appellant's disability, and the third and fourth repeated those charges but based them on appellant's association with his disabled wife. The District's demurrer was sustained in part and overruled in part. The court dismissed the first and second causes of action for failure to exhaust administrative remedies, because appellant's administrative complaint did not allege he was disabled, as did his complaint, but only that his wife was disabled. The court overruled the demurrer as to the third and fourth causes of action, which were allowed to stand.

After conducting discovery, the District moved for summary judgment as to the third and fourth causes of action. The court granted the motion and on that basis entered judgment in favor of the District. The court denied the District's request for an award of attorney fees, but awarded it costs. This timely appeal followed.

## DISCUSSION

Appellant's arguments on appeal are quinary: (1) the trial court erred in sustaining the District's demurrer as to his first two causes of action because he did not fail to exhaust administrative remedies; (2) the District cannot avoid liability under the FEHA by blaming the alleged discrimination on his union; (3) the PacifiCare Plan adversely affects the disabled even though it is offered to the disabled and nondisabled alike; (4) undisputed evidence establishes all elements necessary for a prima facie disparate impact disability discrimination claim, entitling him to try his case to a jury; and (5) sufficient evidence established a disparate treatment disability discrimination claim, entitling him also to try that issue to a jury. Appellant also maintains that the trial court improperly allowed the District to recover its costs.

As we shall determine that appellant cannot establish a prima facie case of disability discrimination, it is unnecessary for us to address his other claims.[2]

---

[2] Nor do we find it necessary to address the District's claim that appellant lacks standing. The District claims that, under the facts of this case, the current provision of the FEHA barring discrimination against a person with a physical disability, which includes someone "associated with a person who has [such a disability]" (§ 12926, subd. (m)), does not apply to appellant's claims. Thus, appellant has no standing to sue under the FEHA for discrimination based on an employee's association with a disabled person. (See *Micek v. City of Chicago* (N.D.Ill. 1999) 1999 U.S. Dist. LEXIS 16263 [1999 WL 966970, 16 NDLR P 226].) Moreover, since this subdivision was added in 1999 (Stats. 1999, ch. 591, § 5.1) and became effective on January 1, 2000, the District alternatively argues that section 12926, subdivision (m) is not retroactive to events occurring in 1998, when the alleged discrimination took place. Appellant answers that, as stated in uncodified portions of the measure, the 1999 amendments "do not constitute a change in, but are declaratory of existing law" (Stats. 1999, ch. 591, § 16), and a prohibition

## I.

■ "Summary judgments are reviewed de novo. [Citations.] 'Because trial judges *no longer exercise discretion* in considering a summary judgment motion, application of the abuse of discretion standard is inappropriate. Under current law, summary judgment motions raise *only questions of law* regarding the construction and effect of the moving and opposing papers; and questions of law are subject to the *independent* standard of review.' [Citations.] [¶] We apply the same three-step analysis required of the trial court. ' " 'First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond . . . . [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. . . . [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue.' " [Citations.]' (*Chevron U.S.A., Inc v. Superior Court* (1992) 4 Cal.App.4th 544, 548 [5 Cal.Rptr.2d 674].)" (*Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 502–503 [10 Cal.Rptr.3d 568].)

(2) The central issue framed by the pleadings is whether the District's conduct, which is undisputed, constitutes an unlawful employment practice under the FEHA. As material, the FEHA provides: "It shall be an unlawful employment practice . . . [¶] (a) For an employer, because of the . . . physical disability [or] . . . medical condition . . . of any person, to refuse to hire or employ the person . . . , or to bar or to discharge the person from employment . . . , *or to discriminate against the person* in compensation or *in terms, conditions, or privileges of employment.*" (§ 12940, subd. (a), italics added.) The parties agree that the "terms and conditions" of employment include fringe benefits such as healthcare insurance. (See *Castellano v. City of New York* (2d Cir. 1998) 142 F.3d 58, 66, cert. den. (1998) 525 U.S. 820 [142 L.Ed.2d 47, 119 S.Ct. 60].)

■ "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 [100 Cal.Rptr.2d 352, 8 P.3d 1089].) In general, there are two types of illegal employment discrimination under the ADA and the FEHA: disparate treatment and disparate impact. (*Raytheon Co. v. Hernandez*

---

against associational discrimination has been embedded in California for decades, citing, among other cases, *Winchell v. English* (1976) 62 Cal.App.3d 125 [133 Cal.Rptr. 20] and *Kotev v. First Colony Life Ins. Co.* (C.D.Cal. 1996) 927 F.Supp. 1316, 1320. We need not, and do not, address the applicability of section 12926, subdivision (m), because we conclude that, even if this provision applies to the facts of the case, appellant's claim fails because he has not made out a prima facie case of disability discrimination.

(2003) 540 U.S. 44, 52 [157 L.Ed.2d 357, 124 S.Ct. 513]; *Heard v. Lockheed Missiles & Space Co.* (1996) 44 Cal.App.4th 1735, 1748 [52 Cal.Rptr.2d 620].) In order to prevail under a disparate *treatment* employment discrimination theory, a member of a protected class must show the employer harbored discriminatory intent. (*Raytheon Co. v. Hernandez,* at pp. 52–53; *Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 195 [48 Cal.Rptr.2d 448].) To prevail on a theory of disparate *impact,* the employee must show that regardless of motive, a facially neutral employer practice or policy, bearing no manifest relationship to job requirements, in fact had a disproportionate adverse effect on certain employees because of their membership in a protected group. (*Guz v. Bechtel National, Inc.,* at p. 354, fn. 20; *Katz v. Regents of the University of California* (9th Cir. 2000) 229 F.3d 831, 835, cert. den., (2001) 532 U.S. 1033 [149 L.Ed.2d 779, 121 S.Ct. 1989].)

■ Under both federal and state law, disability discrimination claims proceed through three stages. First, the plaintiff has the burden of establishing a prima facie case of discrimination. Second, if the plaintiff meets this burden, the employer must offer a legitimate nondiscriminatory reason for the adverse employment decision. Third, and finally, the plaintiff bears the burden of proving the employer's proffered reason pretextual. (*Caldwell v. Paramount Unified School Dist., supra,* 41 Cal.App.4th at pp. 196–197.) When there is no disputed issue of material fact that the employer had a nondiscriminatory reason for the adverse employment decision, the employer is entitled to summary judgment. (*Id.* at pp. 202–203.)

Appellant's first two causes of action, respectively, allege disparate treatment and disparate impact. His two remaining causes of action do the same, but also assert appellant was subjected to an adverse employment action because of his association with his disabled wife.[3]

---

[3] Though no cause of action alleges the District failed to reasonably accommodate his or his wife's infertility, or even refer to the provisions of the FEHA that require reasonable accommodation (§ 12940, subds. (m) & (n)), appellant maintains that disparate treatment arises from the failure to reasonably accommodate a known disability. According to appellant, "once the District knew of the Knights' disability, whether or not it had entered into the health plan without that knowledge, it had a duty to attempt to accommodate the Knights' disability and its failure to do so was *intentional disparate treatment.*" (Italics added.)

As earlier pointed out, appellant's October 7, 1998 letter to the assistant superintendent of employee services for the District, which appellant characterizes as a request for reasonable accommodations, asked that the District "improve the infertility insurance coverage" for all employees, claiming exclusion of IVF was a disability-based discrimination that violated the ADA. State law bars school districts from bargaining about the "terms and conditions of employment," which include "medical . . . insurance," with anyone but elected representatives of appropriate employee bargaining units. (§§ 3543.1–3543.3, 53200, subd. (d).) Therefore, without violating state law, and perhaps as well its own bargaining agreement with HEA, the District could not negotiate its healthcare plan with appellant. Furthermore, an employer is only required to reasonably accommodate a *"known"* disability or medical condition. (§ 12940,

## II.

■ Appellant acknowledges that, just as California courts look to federal judicial interpretations of the ADA in construing analogous provisions of the FEHA (see, e.g., *Pensinger v. Bowsmith, Inc.* (1998) 60 Cal.App.4th 709, 719 [70 Cal.Rptr.2d 531], disapproved on other grounds in *Colmenares v. Braemer Country Club, Inc.* (2003) 29 Cal.4th 1019, 1031, fn. 6 [130 Cal.Rptr.2d 662, 63 P.3d 220]; *Hon v. Marshall* (1997) 53 Cal.App.4th 470, 475 [62 Cal.Rptr.2d 11), so too should they also look to EEOC interpretations of the ADA when called upon to interpret comparable provisions of the FEHA. Appellant's construction of the FEHA is not, however, supported by the EEOC's interpretation of pertinent provisions of the ADA.

Noting that "some health insurance plans provide fewer benefits for 'eye care' than for other physical conditions," the EEOC takes the position that "[s]uch broad distinctions, which apply to the treatment of a multitude of dissimilar conditions and which constrain individuals both with and without disabilities, are not distinctions based on disability. Consequently, although such distinctions may have a greater impact on certain individuals with disabilities, they do not intentionally discriminate on the basis of disability and do not violate the ADA."[4] (EEOC Guidance, Notice No. 915.002, *supra*, § III, subd. B.)

Appellant maintains exclusion of IVF treatment is not among the "broad distinctions" the EEOC had in mind. Conceding it would not be discriminatory to exclude general eye care treatment, appellant contends it would violate the ADA, and a fortiori the FEHA,[5] to exclude a specific treatment for blindness; and exclusion of a specific treatment for blindness is analogous to

---

subds. (m) & (n).) The District maintains there is no evidence it was at any material time aware appellant or his wife suffered from a disability or medical condition, and it cannot refuse to reasonably accommodate a disability of which it was ignorant.

We do not decide whether appellant's letter of October 7, 1998, was a request for reasonable accommodations. In light of our conclusion that appellant has not established a prima facie claim for disability discrimination, the issue is moot.

[4] In a footnote, the EEOC states that "it would violate the ADA for an employer to selectively apply a universal or 'neutral' non-disability based insurance distinction only to individuals with disabilities. Thus, for example, it would violate the ADA for an employer to apply a 'neutral' health insurance plan limitation on 'eye care' only to an employee seeking treatment for a vision disability, but not to other employees who do not have vision disabilities. Charges alleging that a universal or 'neutral' non-disability based insurance distinction has been selectively applied to individuals with disabilities should be processed using traditional disparate treatment theory and analysis." (EEOC, Interim Enforcement Guidance on Application of ADA to Health Insurance, Notice No. 915.002 (June 8, 1993) § III, subd. B, fn. 8, reprinted in Fair Empl.Prac.Manual (BNA) 405:7115, 7118), and available at <http://www.eeoc.gov/policy/docs/health.html> [as of Aug. 24, 2005] (EEOC Guidance).)

[5] Appellant emphasizes that the Legislature has declared that "in the area of disabilities, . . . [a]lthough the [ADA] provides a floor of protection, this state's law has always . . . afforded additional protections." (§ 12926.1, subd. (a).)

exclusion of a specific treatment for infertility, such as IVF treatment. We cannot agree. The EEOC Guidance clearly indicates that exclusion of a specific treatment for blindness (or for any other affliction, such as infertility) is not disability-based discrimination violative of the ADA.

The discrimination appellant complains of is not genuinely based on infertility, because the PacifiCare Plan covers many (perhaps most) forms of infertility treatment. The discrimination at issue is only suffered by individuals, like appellant and his wife, who experience types of infertility not responsive to forms of treatment covered by the PacifiCare Plan, and are treatable only through IVF, a particularly expensive form of treatment ordinarily utilized only when other treatments for infertility have failed. (See *Saks v. Franklin Covey Co.* (S.D.N.Y. 2000) 117 F.Supp.2d 318, 320, 322–323.) As the EEOC explains, a distinction that has a greater adverse impact on disabled individuals who require a particular form of treatment but not other disabled persons does not discriminate on the basis of disability within the meaning of the ADA. If the ADA and the FEHA prohibited the treatment-based distinction appellant challenges, the statutes would constitute not just shields against disability discrimination but swords mandating comprehensive healthcare coverage for all job-related disabilities, because that is the only form of coverage that does not discriminate on the basis of treatment. This is not what the FEHA was designed to accomplish.

■ To begin with, the Knox-Keene Health Care Service Plan Act of 1975 (Health & Saf. Code, § 1340 et seq.) specifically authorizes the exclusion of coverage for IVF treatment. A 1989 amendment to that act declares that every healthcare service plan contract that covers hospital, medical, or surgical expenses on a group basis, or which is a health maintenance organization, "shall offer coverage for the treatment of infertility, *except in vitro fertilization*, under those terms and conditions as may be agreed upon between the group subscriber and the plan." (Health & Saf. Code, § 1374.55, subd. (a), italics added; see *id.*, subd. (c).)

Nor does federal case law interpreting the ADA prohibit treatment-based distinctions. The most relevant cases, which appellant endeavors to persuade us were wrongly decided or are distinguishable, reject his theory that the exclusion of IVF treatment offends the ADA and should therefore be deemed also to violate the FEHA.

In *Krauel v. Iowa Methodist Medical Center* (8th Cir. 1996) 95 F.3d 674 (*Krauel*), a female employee alleged her employer's denial of health insurance coverage for her fertility treatments violated the ADA and other federal statutes. Summary judgment for the employer was granted on the ground, among others, the exclusion was neither a disability-based exclusion nor a

subterfuge to evade the purposes of the ADA. Reviewing the issues de novo, the court of appeals affirmed. With respect to the question whether the exclusion of infertility treatment was a disability-based distinction, the court relied on the language of the EEOC Guidance earlier discussed. Applying the EEOC's reasoning, the court concluded that "[i]n this case, the Plan's infertility exclusion does not single out a particular group of disabilities, allowing coverage for some individuals with infertility problems, while denying coverage to other individuals with infertility problems. Rather, the Plan's infertility exclusion applies equally to all individuals, in that no one participating in the Plan receives coverage for treatment of infertility problems. For example, the Plan exclusion bars coverage for infertility caused by age, a condition which is not recognized as a disability under the ADA, and for infertility caused by ovarian cancer, which is defined as a disability under the ADA. Therefore, the District Court properly held that the Plan is not a disability-based distinction in violation of the ADA." (95 F.3d at p. 678.)

Rejecting this reasoning, appellant summarizes his argument as follows: "The exclusion of coverage for a prominent and well-known treatment for infertility disability impacts solely those employees and those associated with them who suffer from infertility; it has no impact whatsoever on employees who do not suffer from that disability. Therefore, under the EEOC Guidance, such an exclusion is a discriminatory, disability-based exclusion." This confusing argument implicitly assumes either that persons whose infertility can only be treated through IVF treatment suffer a distinctive disability or that individuals whose infertility can be treated in other ways do not suffer an "infertility disability." As neither premise is tenable, we reject the argument.

It is true that, unlike the healthcare plan at issue in *Krauel*, the PacifiCare Plan does not deny coverage for all infertility problems, but only those necessitating IVF. This is not, however, an important difference. The similarity of this case to *Krauel* that matters is that in both cases the exclusion applies uniformly to all covered persons. Because everyone participating in the PacifiCare Plan receives the same coverage for infertility treatment, the Plan is not a disability-based distinction in violation of the FEHA.

As stated by the Ninth Circuit in *Weyer v. Twentieth Century Fox Film Corp.* (9th Cir. 2000) 198 F.3d 1104 (*Weyer*), which relied on *Krauel*, "there is no discrimination under the [ADA] where disabled individuals are given the same opportunity as everyone else, so insurance distinctions that apply equally to all employees cannot be discriminatory." (*Weyer*, at p. 1116.) The issue in *Weyer*—whether it violates the ADA to provide greater benefits for physical disabilities than mental ones—is different from that before us, but the court's reasoning is in part nonetheless germane. The court found no discrimination under the ADA primarily because the employer did not treat

the employee differently because of her disability. "It simply gave her the same opportunity that it gave all the rest of its employees—buy into the group policy with the limitation at the cheaper, group price or buy her own individual insurance coverage without the limitation at whatever the market price may be. . . . [¶] '. . . It did not charge higher prices to disabled people, on the theory that they might require more in benefits. Nor did it vary the terms of its plan depending on whether or not the employee was disabled. All employees—the perfectly healthy, the physically disabled, and the mentally disabled—had a plan that promised them long-term benefits from the onset of disability until age 65 if their problem was physical, and long-term benefits for two years if the problem was mental or nervous.' " (*Weyer,* at p. 1116, fn. omitted.)[6]

*Saks v. Franklin Covey Co., supra,* 117 F.Supp.2d 318, also holds that the exclusion of surgical impregnation procedures such as IVF does not violate the ADA and other antidiscrimination laws because the employer's plan "offers the same insurance coverage to all its employees. It does not offer infertile people less pregnancy and fertility-related coverage than it offers to fertile people. Therefore, as a matter of law, the Plan does not violate the ADA." (*Saks v. Franklin Covey Co.* at p. 326.) The court observed that "[i]nsurance policies have historically contained exclusions for particular types of procedures. Indeed, surgical impregnation procedures are not the only treatments expressly excluded from coverage under [the employer's] Plan. The policy also excludes artificial heart implantation, penile prosthetic implants, Kerato-refractive eye surgery and non-human organ transplants. It is beyond dispute that, under this Plan, people with cancer have access to a greater range of treatment for their problem than do people with infertility. But all employees face exactly the same limitation. That the limitation hits infertile employees like Ms. Saks harder than it hits other employees is of course true, but the limitation on mental health coverage in [*EEOC v.*] *Staten Island Savings Bank* [(2d Cir. 2000) 207 F.3d 144] was more disruptive to bank employees whose family members needed therapy than to those who

---

[6] *Fletcher v. Tufts University* (D.Mass. 2005) 367 F.Supp.2d 99, which also relates to a disability plan that distinguishes between persons with physical disabilities and those with mental disabilities, takes a position different from *Weyer. Fletcher* interprets the EEOC Guidance as meaning that "[d]ifferences in coverages or benefits are to be tolerated under Title I [of the ADA] only to the extent that they are based on rational classifications of risks" (*Fletcher,* at p. 113), because the safe harbor provision of the ADA (42 U.S.C. § 12201(c)) was designed to allow insurance companies and others to take risk factors into account in the design of insurance plans. Putting aside the fact that the present case does not involve different coverage for distinctive (mental and physical) disabilities, the rationale of *Fletcher* would not change our view of this case. The fact that insurance policies have historically excluded IVF (see *Saks v. Franklin Covey Co., supra,* 117 F.Supp.2d 318) due to the expense of IVF and because the procedure successfully treats infertility in a relatively small percentage of individuals, indicates the exclusion is based on a rational risk classification.

did not. Nonetheless, the Circuit held that there was no ADA discrimination." (*Saks v. Franklin Covey Co.*, at p. 327, fn. omitted.)

■ Because health insurance distinctions that apply equally to all cannot be discriminatory, we conclude that the conduct of the District complained of did not violate the FEHA.[7]

## III.

After summary judgment was awarded in its favor, the District moved for an award of attorney fees and costs. The trial court denied the request for attorney fees but, denying appellant's motion to strike the District's cost bill, awarded the District costs in the amount of $3,141.14.

■ The FEHA allows a trial court to exercise its discretion to award or deny reasonable attorney fees and costs, including expert witness fees, to a prevailing defendant in a suit under the act, except where the action is filed by a public agency or a public official, acting in an official capacity. (§ 12965, subd. (b).) Relying on *Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383 [15 Cal.Rptr.2d 53] (*Cummings*), appellant maintains costs may be awarded under the statute only if the plaintiff's case is "frivolous, unreasonable or groundless" (*id.* at p. 1390), and his case cannot be so characterized. We do not agree that costs may be awarded a prevailing defendant only when the plaintiff's case is utterly without merit.

In *Cummings,* the Court of Appeal overturned an award of attorney fees and costs as an abuse of discretion because the plaintiff's age discrimination

---

[7] Anticipating we may find the PacifiCare Plan nondiscriminatory because it provides the same coverage to all persons, appellant advances the alternative argument that the Plan is discriminatory for the different reason that it has an adverse impact on persons suffering his and his wife's disability, who are therefore entitled to preferential treatment. Appellant points out that "a person with a disability may be the victim of discrimination precisely because she did not receive disparate treatment when she needed accommodation. [Citation.] In the context of disability, therefore, equal treatment may not beget equality, and facially neutral policies may be, in fact, discriminatory if their effect is to keep persons with disabilities from enjoying the benefits of services that, by law, must be available to them." (*Presta v. Peninsula Corridor Joint Powers Bd.* (N.D.Cal. 1998) 16 F.Supp.2d 1134, 1136.) *Presta,* the case appellant relies upon most heavily, was a suit by a disabled person against a railroad operator claiming discrimination in the provision of railroad services in violation of title II of the ADA and other statutes relating to discrimination in public accommodations. The policy creating an affirmative duty in some circumstances to provide preferred treatment for disabled persons when necessary to enable them to utilize a public accommodation on an equal footing with others (see, e.g., *Henrietta D. v. Bloomberg* (2d Cir. 2003) 331 F.3d 261, 276–277) is obviously inapplicable to disabilities that do not effect a person's ability to use such services. The rationale of *Presta* and like cases certainly does not suggest employers must preferentially accommodate employees with disabilities, such as infertility, that do not impair their ability to perform their job.

case could not fairly be deemed "frivolous, unreasonable or groundless." (*Cummings, supra,* 11 Cal.App.4th at p. 1390.) The court's analysis was based on *Christiansburg Garment Co. v. EEOC* (1978) 434 U.S. 412 [54 L.Ed.2d 648, 98 S.Ct. 694], in which the United States Supreme Court identified the standard for awarding attorney fees to a prevailing defendant in an action under the Civil Rights Act of 1964. *Christiansburg* held that the equitable considerations favoring the award of attorney fees to prevailing plaintiffs in civil rights actions do not apply when the prevailing party is the defendant, because liability for such fees would undoubtedly diminish the willingness of plaintiffs of limited means to bring meritorious suits to vindicate a policy Congress considered of the greatest importance. (*Christiansburg,* at p. 418). Therefore, where the defendant prevails, the court may award attorney fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even [if] not brought in subjective bad faith." (*Id.* at p. 421.)

█ In *Perez v. County of Santa Cruz* (2003) 111 Cal.App.4th 671 [3 Cal.Rptr.3d 867] (*Perez*), the Court of Appeal pointed out that, as the *Cummings* court did not fully appreciate, "the issue in *Christiansburg* was limited to the recovery of *attorney fees.* Costs outside of those fees were not at issue. In *Cummings,* the court did not segregate the two parts of the award in applying *Christiansburg,* but overturned them together." (*Perez,* at p. 680.) The *Perez* court found the blending of fees and costs in *Cummings* unnecessary and inappropriate, pointing out that "[s]everal federal courts themselves have refused to apply the *Christiansburg* test for recovery of defense attorney fees to ordinary litigation expenses. [Citations.] 'The rationale for this distinction is clear. Whereas the magnitude and unpredictability of attorney's fees would deter parties with meritorious claims from litigation, the costs of suit in the traditional sense are predictable, and, compared to the costs of attorneys' fees, small.' [Citation.]" (*Perez,* at pp. 680–681, fn. omitted.) Disagreeing with the *Cummings* court's application of the *Christiansburg* standard for attorney fees to the ordinary litigation expenses allowed under Code of Civil Procedure section 1033.5, the *Perez* court concluded "that ordinary litigation costs are recoverable by a prevailing FEHA defendant even if the lawsuit was not frivolous, groundless, or unreasonable." (*Perez,* at p. 681.)

Unlike the court in *Cummings,* which did not focus on costs, and simply assumed they should be treated in the same manner as attorney fees, the *Perez* court explained that the policies justifying the *Christiansburg* standard for awarding attorney fees to a prevailing defendant do not persuasively apply to the award to such a party of costs. For that reason, and because we believe its reasoning persuasive, we agree with *Perez.* It is true that costs may in some FEHA cases be considerable, and that equitable considerations may warrant the denial of a cost award, but *Perez* does not prevent nonprevailing

plaintiffs from pleading and demonstrating that such an award would impose undue hardship or otherwise be unjust, and should therefore not be made, and we are unwilling to assume trial judges would turn a deaf ear to such equitable claims.

Because appellant did not claim a cost award would be inequitable in this case, and because he has not provided any basis upon which we could find the cost award an abuse of discretion, we conclude that the award was proper.

## DISPOSITION

For the reasons earlier set forth, we hold that appellant cannot sustain his burden of establishing a prima facie case of disability discrimination. Accordingly, the judgment is affirmed. Costs for this appeal shall be awarded the District.

Lambden, J., and Ruvolo, J., concurred.