[No. A118823. First Dist., Div. One. July 25, 2008.]

CAROL GRENALL et al., as Administrators, etc., Plaintiffs and Appellants, v.
UNITED OF OMAHA LIFE INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Edward Napier Thomson and Byron Benjamin Kilgore for Plaintiffs and Appellants.

Freitas, McCarthy, MacMahon & Keating, Thomas F. Keating, Matthew C. Mani and Shelley A. Kramer for Defendant and Respondent.

OPINION

**STEIN, J.**—Jean M. Simes (Simes) died of cancer less than four months after purchasing an annuity that provided for monthly benefit payments as long as she lived. Plaintiffs Carol Grenall and Mike Sutton, the administrators of her estate (the Estate), sought to rescind the annuity based on a mistake of fact, namely, that Simes was unaware at the time of the contract that she was terminally ill. The trial court granted summary judgment in favor of the issuing company, defendant United of Omaha Life Insurance Company (United). We affirm because plaintiffs failed to establish an essential element for rescission based on mistake of fact.

### FACTUAL AND PROCEDURAL BACKGROUND

The essential facts are undisputed for purposes of appeal:

Simes submitted a signed annuity application to United's agent on October 2, 2001, along with a single premium of $321,131. United then issued a policy for a single premium immediate annuity, effective the date of Simes's application. Simes received a copy of the policy six weeks after her application. The cover page of the annuity policy includes the following provision: "READ YOUR POLICY CAREFULLY. [¶] It includes the provisions on the following pages. [¶] If you are not satisfied with your policy, return it to us or our agent within 30 days after you receive it. We will refund the single premium and cancel the policy as of its date of issue." Among the provisions that followed, the annuity policy provided for monthly payments of $3,000 to Simes for "life only"—specifically, a "life contingent payable . . . as long as the annuitant lives."

On January 25, 2002, after receiving three benefit payments, Simes was diagnosed with ovarian cancer. She died less than a week later on January 30, 2002. United stopped making annuity payments in April 2003 when it learned of her death.

The Estate filed suit against United, alleging two causes of action, for breach of contract and declaratory relief, in a form complaint. The breach of contract claim alleges that United had refused to make payments under the terms of the annuity "until the sum of the benefit payments equals the single premium." The declaratory relief cause of action seeks resolution of a dispute between the parties as to their respective rights under the annuity policy.

United moved for summary judgment, claiming the terms of the contract provided for a life annuity and did not require a refund of the premium to the Estate. Accordingly, United maintained it was entitled to summary judgment on the breach of contract and declaratory relief causes of action. In its opposition to the motion, the Estate characterized the annuity as a contract of adhesion and raised issues of procedural and substantive unconscionability.

The trial court granted summary judgment on the breach of contract cause of action, concluding that the undisputed facts showed that United had not breached the payment option to which the parties agreed, as the contract required monthly benefit payments only during Simes's lifetime.[1] The court denied the motion as to the declaratory relief cause of action, concluding that the evidence raised triable issues of material fact as to whether Simes made a unilateral mistake in agreeing to the life annuity payment option, justifying reformation, and whether surrounding circumstances justified rescission and restitution based on a mistake of fact or a mistake of law.[2]

After additional discovery, United renewed its motion for summary judgment on the declaratory relief cause of action, arguing that the Estate could not prevail on the factual issues identified in the trial court's prior order. United asserted that there was no evidence of a mistake by Simes or of what was in her mind when she purchased the annuity. In its opposition, the Estate raised a single claim for rescission based on a mistake of fact. Specifically, the Estate produced evidence that Simes did not know she had a terminal illness when she entered the annuity contract or during the statutory rescission period. The Estate also argued that the contract was procedurally and

---

[1] The trial court's interim ruling on the breach of contract cause of action is reviewable on appeal from the final judgment. (See *Jennings v. Marralle* (1994) 8 Cal.4th 121, 128 [32 Cal.Rptr.2d 275, 876 P.2d 1074].) Nonetheless, as the Estate does not assert error based on the trial court's interpretation of the contract, we deem any issues related to the interpretation of the contract waived and do not consider them. (See *Baugh v. Garl* (2006) 137 Cal.App.4th 737, 746 [40 Cal.Rptr.3d 539].)

[2] As noted, the trial court construed the Estate's declaratory relief cause of action to encompass reformation based on a unilateral mistake and rescission and restitution based on a mistake of fact or a mistake of law. United challenges this determination in its motion to dismiss and urges it as an additional ground for affirmance, arguing that the pleadings defined the issues for purposes of the motion and noting that the Estate's complaint did not seek rescission based on a mistake of fact. As we affirm the judgment on other grounds, we need not reach this issue.

substantively unconscionable. United responded with authority rejecting rescission of annuity contracts under these circumstances.

The trial court granted summary judgment in favor of United, concluding that Simes's undetected cancer did not constitute a mistake of fact rendering enforcement unconscionable. The trial court noted that purchasers of annuities assume the risk of dying before recouping their investments and concluded it was reasonably foreseeable that Simes would die before the benefit payments matched her premium. Under these circumstances, the trial court held that it was reasonable to allocate to Simes the risk of a mistake regarding her health and life expectancy.

Judgment in favor of United was entered on June 15, 2007. The Estate filed a timely notice of appeal. United filed a motion to dismiss and for sanctions simultaneously with its respondent's brief. This court deferred a ruling on the motion pending its decision on the merits.[3]

### Discussion

An appellate court reviews a grant of summary judgment de novo, as it raises only questions of law regarding the construction and effect of the arguments and evidence before the trial judge. (*Knight v. Hayward Unified School Dist.* (2005) 132 Cal.App.4th 121, 128 [33 Cal.Rptr.3d 287]; see *Kolodge v. Boyd* (2001) 88 Cal.App.4th 349, 355–356 [105 Cal.Rptr.2d 749].) Summary judgment is proper if there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) In this case, the parties agree that the material facts are undisputed for purposes of appeal. Based on these undisputed facts, United contends it is entitled to judgment as a matter of law on the Estate's rescission claim.

The facts on which the Estate relied below purport to show the following: (1) Simes did not know at the time of her application and during the statutory rescission period that she had terminal ovarian cancer that would result in her death four months later; (2) Simes's illness affected her ability to make decisions; and (3) Simes did not receive a copy of the annuity policy until mid-November 2001. The sole issue argued by the Estate on appeal is whether these facts provide a legal basis for rescission of the life annuity

---

[3] United seeks dismissal of the appeal for failure to provide a proper record, claiming the Estate's appendix does not contain "all essential documents" and does not comply with the California Rules of Court. United fails to identify the missing documents and has provided its own appendix, presumably curing any deficiency. The essential facts are undisputed on appeal. Accordingly, we consider the appeal on its merits.

contract based on a mistake of fact. We hold, as a matter of law, that they do not, for the following reasons.

■ California law permits rescission of a contract when a party's consent is given by mistake. (Civ. Code, § 1689, subd. (b)(1); *Donovan v. RRL Corp.* (2001) 26 Cal.4th 261, 278 [109 Cal.Rptr.2d 807, 27 P.3d 702] (*Donovan*).) On this basis, the Estate asserts a right to rescind the annuity policy, alleging that Simes would not have entered the contract but for a mistake of fact, specifically, the terminal illness she did not know she had. (2) A mistake of fact may consist of a "[b]elief in the present existence of a thing material to the contract, which does not exist." (Civ. Code, § 1577, subd. 2.)[4] The alleged mistake therefore may be characterized as Simes's erroneous belief at the time of the contract that she was in good health and had a reasonable life expectancy.

A mistake of this nature does not support a claim for rescission. The Estate asserts a unilateral mistake and offers no evidence that United had reason to know of or caused the mistake. Accordingly, to prevail at trial, the Estate would have been required to prove the following: (1) Simes was mistaken regarding a basic assumption upon which she made the contract; (2) the mistake materially affected the agreed exchange of performances in a way that was adverse to Simes; (3) Simes did not bear the risk of the mistake; and (4) the effect of the mistake was such that enforcement of the contract would be unconscionable. (See *Donovan, supra,* 26 Cal.4th at p. 278.) The facts on which the Estate relies demonstrate that it cannot establish the third of these elements.[5]

■ We conclude, based on the nature of the contract and the alleged mistake, that Simes bore the risk of the mistake, as a matter of law. A contracting party bears the risk of a mistake when the agreement so provides or when the party is aware of having only limited knowledge of the facts relating to the mistake but treats this limited knowledge as sufficient. (*Donovan, supra,* 26 Cal.4th at p. 283, citing Rest.2d Contracts, § 154.) Additionally, the court may allocate the risk to a party because it is reasonable under the circumstances to do so. (*Donovan,* at p. 283.) The contract in this case does not expressly assign the risk of the alleged mistake. Nonetheless, parties who contract for "life contingent" benefits necessarily do so based on limited knowledge of the very facts about which Simes was mistaken. We cannot fix the length of our lives or even the state of our health

---

[4] Under Civil Code section 1577, the mistake also must "not [be] caused by the neglect of a legal duty" by the mistaken party. This provision is not at issue here.

[5] In light of our conclusion in this regard, we need not address the remaining elements.

with certainty, and the parties knew that their expectations in this regard were at best an educated guess. ■ Indeed, life annuity contracts are read "in the light of the knowledge of all mankind, that death may come tomorrow." (*Rishel v. Pacific Mut. Life Ins. Co. of California* (10th Cir. 1935) 78 F.2d 881, 883 (*Rishel*).)

■ The allocation of this risk to Simes is reasonable because such risks are an inherent part of life annuity contracts, which reflect, at their essence, a longevity wager measured by average life expectancy. (See Rest.2d Contracts, § 154, illus. 3, p. 405 [reasonable allocation of risk that annuitant has incurable disease and will live no more than a year]; see also *Stockett v. Penn Mutual Life Ins. Co.* (1954) 82 R.I. 172 [106 A.2d 741, 744] [contract not based on life expectancy of particular annuitant, but on "the average life expectancy of a specified group within which the individual may reasonably be included"].) Annuitants who survive the average life expectancy receive benefits beyond the premium; those who die earlier do not recoup their investments. Both risks are contemplated by the parties and, indeed, are an integral part of their bargain. (See *Guthrie v. Times-Mirror Co.* (1975) 51 Cal.App.3d 879, 885 [124 Cal.Rptr. 577] ["Where parties are aware at the time the contract is entered into that a doubt exists in regard to a certain matter and contract on that assumption, the risk of the existence of the doubtful matter is assumed as an element of the bargain"].)[6]

Accordingly, California courts have rejected challenges to such contracts on the ground that death came unexpectedly early. (See *Coyne v. Pacific Mut. Life Ins. Co.* (1935) 8 Cal.App.2d 104, 109 [47 P.2d 1079] (*Coyne*) [rejecting failure of consideration where annuitant committed suicide before first payment, finding he "ran the risk of such an event"]; *Gold v. Salem Lutheran Home Assn.* (1959) 53 Cal.2d 289, 291 (*Gold*) [rejecting doctrine of frustration where resident died before performance of life care contract began, finding this was a reasonably foreseeable risk assumed by the parties]; *Sipes v. Equitable Life Assur. Society of the United States* (N.D.Cal. 1996) 1996 U.S.Dist. Lexis 12325, *12 [rejecting failure to disclose to woman in her 80's that life annuity was bad investment, as annuitants are presumed to know they may die before receiving substantial benefits].)

California law is consistent with that of other jurisdictions. (See, e.g., *Rishel, supra,* 78 F.2d at p. 883 ["An annuitant, for a sum certain, shares the risk of outliving his expectancy with others . . . . In a sense, if he lives longer than the average of his age, he wins; not so long, he loses . . . ."]; *Tabachinsky v. Guardian Life Insurance Company* (N.Y.Misc. 1956)

---

[6] The Estate's own evidence suggests that Simes understood the nature of this exchange. Witness Michael Sutton testified at deposition that Simes told him she would be making money after 10 years of collecting on the annuity.

147 N.Y.S.2d 719, 721 [same]; *Moses v. Manufacturers Life Insurance Company* (D.S.C. 1968) 298 F.Supp. 321, 325 [the parties contemplated both the possibility that the purchaser would die before reaching her life expectancy and that she would live beyond it]; *Guthmann v. La Vida Llena* (1985) 103 N.M. 506, 513 [709 P.2d 675] [upholding retirement home's retention of residency fee on resident's death, as resident took the risk of dying sooner than expected]; see also 1 Appleman, Insurance Law and Practice (rev. ed. 1981) Annuities, § 86, pp. 306–307 ["the mere fact that the annuitant dies shortly after the contract is entered into, or after one or two payments only have been made, does not justify the setting aside of the contract, as that is one of the risks contemplated by such a form of investment"].)

The Estate does not offer any direct argument contesting allocation of the risk to Simes and simply challenges the California cases on which the trial court relied. The Estate attempts to distinguish *Coyne* and *Gold* on the basis that they involved an unknown risk of death in the future while Simes made a mistake about an *existing* fact—a fatal illness that cut her life expectancy to four months. This distinction, though factually accurate, is not significant. As noted above, the result in each of these cases turns on the nature of the contract and the risks contemplated by the parties, specifically, the risk of an early death. (See *Coyne, supra,* 8 Cal.App.2d at p. 109; *Gold, supra,* 53 Cal.2d at pp. 291–292 [parties "clearly assumed the risk of variation of the life span from that predicted by the mortality tables"].)

Although no California case directly addresses rescission based on a mistake about an annuitant's health at the time of the contract, other jurisdictions have refused to rescind in this context. For example, in *Aldrich v. Travelers Ins. Co.* (1944) 317 Mass. 86 [56 N.E.2d 888], an annuitant who had terminal cancer at the time of the contract died a little over a year later, and her estate sought to rescind based on mutual mistake and unconscionability. The Supreme Court of Massachusetts concluded that both parties had assumed the decedent's health warranted a reasonable expectation of life, but, as reasonable persons, knew this could be wrong and that she might "have within her body a condition that could cause her early death . . . ." (See *id.,* 56 N.E.2d at p. 889.) The court found that the parties entered into a contract "with reference to this very risk," assumed the risks relating to the timing of her death, and were "satisfied to do business on this basis." (*Ibid.*) The court refused to allow rescission "merely because the known and assumed risk turned out to be greater than either or both [sides] expected it to be." (*Ibid.*)

Likewise, in *Woodworth v. Prudential Insurance Co.* (N.Y.App.Div. 1939) 258 A.D. 103 [15 N.Y.S.2d 541], the annuitant's estate sought rescission based on a unilateral mistake of fact, alleging that at the time of the contract, he was "wholly unaware that he was then suffering from serious constitutional diseases which would cause his death in less than two years." (*Ibid.*)

The court rejected rescission, finding that the parties had contemplated "the very possibility that here happened"—that the annuitant might die before his average life expectancy and receive a small fraction of the purchase price. (See 258 A.D. at p. 543; see also *Rishel, supra,* 78 F.2d at p. 887 ["An annuity contract cannot be avoided because . . . it develops that [the annuitant's] health was so impaired when the contract was written that his expectancy was less than the average."]; *Meyer's Executor v. Huber* (Ky.Ct.App. 1955) 280 S.W.2d 157 [rejecting rescission claim based on alleged mistake about state of health and life expectancy]; *Davis v. Equitable Life Assurance Society of the United States* (1939) 280 N.Y. 656 [20 N.E.2d 1017] [although the decedent had cancer when he purchased the annuity, the "contract contemplated such contingency as arose"].)

Our sister states recognize that allocation of the risk to the annuitant in these circumstances is not only reasonable but a practical necessity. "It is difficult to see how any company could carry on an annuity business if the estate of an annuitant could rescind whenever it turned out that the condition of his health did not 'warrant a reasonable expectation of life.' " (*Aldrich v. Travelers Ins. Co., supra,* 56 N.E.2d at p. 889.) Indeed, "[i]f insurance companies never profited from an annuity contract, how could [they] afford to pay those whose lives exceeded the averages upon which their rates were based?" (*Moses v. Manufacturers Life Insurance Company, supra,* 298 F.Supp. at p. 326; see *Woodworth v. Prudential Ins. Co. of America, supra,* 15 N.Y.S.2d at p. 544 [because unpaid balance becomes part of required reserve fund for the benefit of all annuitants in the class, companies would not be able to write contracts or assure proper reserves if they were required to issue refunds "upon proof after death of unknown illness when the contracts were written"].)

In light of these authorities, we hold that Simes bore the risk of the alleged mistake regarding her health and life expectancy at the time of the annuity contract. Because the Estate cannot establish an essential element of its rescission claim, summary judgment is proper. (See Code Civ. Proc., § 437c, subd. (*o*)(1); *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 849 [defendant may meet its burden to show cause of action is without merit by demonstrating that plaintiff cannot establish one or more essential elements].) Accordingly, we need not discuss the other elements of this claim or decide the additional grounds for affirmance urged by United in its respondent's brief and its related motion to dismiss.

Finally, although we reject the Estate's arguments, because there is no California authority directly on point, we do not find them so wholly devoid of merit as to warrant the imposition of sanctions.

## DISPOSITION

The judgment is affirmed with costs to United.

Marchiano, P. J., and Swager, J., concurred.